**STATE, Appellant, v. TANCER, d. b. a. FRANK'S TAVERN, Appellee.**

Ohio Appeals, Second District, Franklin County.

No. 4622.  Decided November 14, 1951.

C. William O'Neill, Atty. Genl., Thomas R. Lloyd, Richard L. Canter, Asst. Attys, Genl., Columbus, for appellant.
Edwin M. Tuttle, Columbus, for appellee.

(NICHOLS, J, of the Seventh District, sitting by designation.)

## OPINION

By NICHOLS, J.

This is an appeal on questions of law from a judgment of the Common Pleas Court reversing a decision of the Board of Liquor Control and directing that Board to issue a D-5 permit to Frank V. Tancer, dba Frank's Tavern, Salem, Ohio.

For a proper determination of this appeal it is necessary first to consider the function of the Common Pleas Court on appeal thereto from the decision of the administration agency. It is now definitely settled that the "appeal" provided for in §154-73 GC, provides only for an appeal on questions of law. This was perfectly understood by the appellant (appellee here) as his notice of appeal is based upon the claim that the Board erred in its orders in the following respects:

"1. That the order of the Board of Liquor Control was confiscatory under the circumstances and an abuse of discretion.

"2. That the order of the Board of Liquor Control resulted from the refusal of the Department of Liquor Control to renew appellant's D-5 Permit after permitting operation for one year on questions erroneously and illegally raised by said Department of Liquor Control.

"3. That the order of the Board of Liquor Control in sustaining the Department of Liquor Control was an abuse of discretion.

"4. For admission of evidence over objection and refusing to permit appellant to introduce evidence over objection.

"5. For other manifest errors in the record amounting to an abuse of discretion."

It is observed that there is no claim that the decision of the Board is against the manifest weight of the evidence, nor did the Common Pleas Court so find. What the Common Pleas Court held is shown by its journal entry, as follows:

"This day this cause came on to be heard upon appeal from a decision of the Board of Liquor Control rejecting appellant's application for renewal of a D-5 liquor permit, and the Court heard the same upon the record, statements of counsel and memoranda filed. The Court found that said appeal was well taken, and that the order of the Board of Liquor Control should be reversed.

"WHEREFORE, it is hereby ordered and decreed that the order of the Board of Liquor Control shall be reversed and a D-5 permit directed to be issued to the appellant. It is further directed that a certified copy of this entry be directed to the Board of Liquor Control by the Clerk of Court of this County."

Such entry does not set forth any specific ground upon which the Board "should be reversed." Standing alone, in the absence of any stated error and from that portion of the entry which purports to direct the Board to issue a D-5 permit to the appellant, it seems that the Court attempted to substitute its judgment for that of the Board. This it was

powerless to do upon such appeal. **Sec. 154-73 GC,** defines the power of the Court upon appeal from the decision of an administrative agency. It "may affirm, reverse, vacate or modify the order of the agency" when it is found that the agency did not follow the applicable law, and its order is subject to review upon questions of law by the Court of Appeals.

In the case of **Farrand, Appellee, v. State Medical Board, Appellant, 151 Oh St 222,** Judge Turner, at **page 224** states:

"The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of men equipped with the necessary knowledge and experience pertaining to a particular field. In providing for an appeal from the decision of such a board of commission, the General Assembly did not intend that a court should substitute its judgment for that of the specially created board or commission but did intend to confer a revisory jurisdiction on the court."

And it is held in the syllabus to the cited case:

"1. The word, 'appeal' as used in §154-73 GC, means the proceedings whereby a court reviews the action or decision of an administrative agency and affirms, reverses, vacates or modifies an order of the agency complained of in the appeal. The court may not substitute its judgment for that of the agency but is confined to determining the rights of the parties in accordance with the statutes and other law applicable.

"2. The word 'appeal,' as used in §154-73 GC, does not authorize a trial de novo of the matter which was before an administrative agency."

**Sec. 6064-8 GC,** reposes in the Board of Liquor Control the power to grant or refuse permits and so long as it does so in accordance with the statute and other law applicable its decision is final and conclusive.

The power of the reviewing court was, therefore, confined to a determination whether the action of the Board was authorized by the statutes and other law applicable. Thus we must look to the claims of the applicant as set forth in his assignments of error filed in the Common Pleas Court, as above quoted, and to a proper determination thereof a review must be made of the facts before the Board at the time of the hearing upon the application for a renewal of the permit, as shown by the record.

Because of the potentialities for harm there can be no doubt of the power of the General Assembly to regulate or prohibit the sale of intoxicating liquors. There is no debat-

able constitutional question involved in this proceeding. The broad power vested by the General Assembly in the Board of Liquor Control to grant or refuse permits to sell intoxicating liquors authorizes that Board to receive and act upon any facts tending to establish and protect the welfare of the inhabitants of the State, unless the Board is prohibited by law from the consideration thereof. The Board is mandatorily required to refuse to issue permits and to cancel them in certain instances prescribed. There is no property right in a permit holder which is not subject to cancellation when authorized by the Act. By §6064-17 GC, a permit holder cannot sell or assign his permit without the consent of the Board. An applicant takes the permit and makes his investment in the business at his own risk and cannot complain that his property has been confiscated without due process of law if renewal of his permit is refused in accordance with the control Act. Nor can any abuse of discretion on the part of the Board in refusing a permit or the renewal thereof be claimed so long as it proceeds in accordance with the law and not arbitrarily. There is no showing here of bias or prejudice upon the part of the Board which could characterize its action as arbitrary, or an abuse of discretion.

As shown by the record, the Board had before it upon consideration of the application for the renewal of a permit to Tancer the fact, among others, that at the time the original permit was applied for by him there was located directly across the street and within much less than 500 feet from the location for which the permit was requested, a church known as the Assembly of God Tabernacle; that upon such original application notice was served upon the church authorities on January 4, 1949, such notice stating that the church had ten days in which to object; that on January 7, 1949, without opportunity for the church to file its objections and without any hearing on objections thereto, the permit was issued to Tancer; that immediately after obtaining knowledge that the permit had been issued the church did object; that there were in the Department's files church objections to a permit at this location, dating back as far as 1945, and there had been previous rejections at this location.

The record further discloses that Mr. Tancer is the son-in-law of Stefen Cosgarea and Elizabeth Cosgarea; that previous to the location of the church across the street Elizabeth Cosgarea had operated at this location under a D-5 permit which had been revoked by the Board for cause; that Stefen Cosgarea had applied for a permit for the same location on June 27, 1945, and his application had been rejected

upon objection by the mayor of the city of Salem; that Tancer and his wife bought the premises from her father and mother, Stefan and Elizabeth Cosgarea; that the application on which the permit was issued to Frank V. Tancer in 1949 was filed September 2, 1947, and that a previous application filed by him had not been allowed because of quota restrictions; that after the revocation of the permit held by Elizabeth Cosgarea the church moved to its present location because of its former location being in proximity to the Black Horse Tavern.

Our examination of the record fails to disclose an objection by applicant to the admission of any testimony, or that any evidence offered by applicant was rejected. The Board considered evidence of the war record of applicant and evidence by way of affidavits and signed petitions in his behalf and testimony to the effect that he had conducted the business at this location for the year beginning January 7, 1950, in a satisfactory fashion.

The only legal question involved in this proceeding arises under the provisions of §6064-16 GC, which was in effect when the permit to Tancer was first granted. This section is as follows:

"Applications for regular permits authorized by this act may be filed with the department of liquor control at any time after this act becomes effective. No permit shall be issued by the department under authority of this act until fifteen days after the application therefor is filed, except in the case of an application from a permit holder for a permit of the same class and for the same location."

The record discloses that on January 26, 1950, a hearing was had before the Director of the permit division of the Liquor Board, as a result of the objections of the church to the renewal of Tancer's permit, and the following was decided by the Director:

"I find under the circumstances that despite the previous issuing of the permit without hearing, and despite the hardship imposed on the applicant, it would be inadvisable to issue permit for Class D-5 premises for this location due to the exceptional proximity to the church and due to the fact, the church had previously moved to escape the proximity of a tavern."

The Board of Liquor Control sustained and affirmed the foregoing order of the Director rejecting the application for a Class D-5 permit for such location.

From his opinion it may be observed that the Common Pleas Court stated:

"* * *

"From the record it appears that appellant was issued a permit in January 7, 1949, and apparently operated for a year without objection from the church, or anyone else. There is no claim but that appellant operated without any apparent irregularity or unlawful manner.

"It is to be noted that the statute does not prohibit the granting of a permit within five hundred feet from a church, but simply provides for the submission of the question upon a hearing of objections by church or other authorities within the prescribed area.

"After a permit has been in use for a year or more, upon an application for a renewal by the same person for the same kind of a permit in the same place, the statute does not require notice to a church which may be within 500 feet of the permit premises.

"The Court concludes that this appellant having operated for the previous year without objection and without any irregularities or illegalities and seeking the same kind of a permit in the same premises, should have had his permit renewed.

"The order of the Board of Liquor Control is therefore reversed and a permit directed to issue to appellant."

The Common Pleas Court was in error in stating there was no objection from the church, as the record clearly discloses that immediately after obtaining knowledge that the permit had been issued the church did object. It did not take action by way of mandamus to compel a hearing on its objections nor injunction to restrain the operation at that location, but such failure would not create an estoppel against its future insistence upon its objections to the renewal of the permit, if the original permit was illegal and void.

The Common Pleas Court was technically correct in stating that the statute does not prohibit the granting of a permit within 500 feet from a church, but in mandatory language the statute does prohibit the granting of a permit until written notice is given to a church located within 500 feet and opportunity provided for a full and complete hearing before the Director upon the subject of the advisability of the issuance of such permit. The statute says that "no permit shall be issued" without compliance with the required notice and hearing.

It being positively shown that no opportunity had been provided the church for a full and complete hearing before the Director, and that the church immediately upon obtaining knowledge that the permit had been issued did object, can it be held that this applicant is a legal permit holder

coming within the exception set forth in the last sentence of §6064-16 GC?

This Court holds that the Board of Liquor Control was without any authority to issue the permit to Frank V. Tancer on January 7, 1950, because of the failure to comply with the mandatory requirements of the statute and that the permit then issued was illegal and absolutely void and of no effect; that the requirement of the statute is not merely directory but is mandatory and without compliance therewith "no permit shall be issued" by the Board; that Frank V. Tancer did not come within the exception set forth in the statute.

Having considered all the errors assigned by applicant in his notice of appeal filed in the Court of Common Pleas and finding no error intervened to his prejudice in the proceedings before the Director or the Board of Liquor Control upon his application for renewal of the permit, or the decision to refuse such permit, the judgment of the Common Pleas Court is reversed and held for naught and the decision of the Board of Liquor Control is affirmed.

Without encumbering this opinion therewith, we refer to the opinion rendered by the Attorney General of the State of Ohio, No. 1212, under date of November 17, 1949, published in the 1949 edition of Opinions of the Attorney General, beginning at page 848, wherein are set forth in detail the authorities, as well as the reasoning, upon which we arrive at our conclusions.

We are not now concerned with any questions which may arise as to the disposition of the money paid by applicant for the permit, or whether he may be found guilty of operating without a valid permit. Perhaps all interested parties will be content to "let sleeping dogs lie."

HORNBECK, PJ, MILLER, J, concur.